**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHEN T. HALEY, | ) | CASE NO. 5:13-cv-00232 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| CITY OF AKRON, et al., | ) | AND ORDER |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on a series of motions listed below. Because plaintiff has sued many defendants, the Court has divided them into groups for ease of identification, as follows:

(1) The City of Akron; Craig Gilbride, the Police Chief of the City of Akron; and James R. Alexander, a police officer for the City of Akron (collectively, "Akron defendants");

(2) The City of Rowlett, Texas; Matt Walling, the Police Chief of the City of Rowlett, Texas; and Jeff Freeman, a detective of the City of Rowlett, Texas (collectively, "Rowlett defendants");

(3) The County of Rockwall, Texas; Kenda Culpepper, the District Attorney for Rockwall, Texas; and Jon Thatcher, the Civil Chief for the County of Rockwall, Texas (collectively "Rockwall defendants").

Each person listed above has been sued in his or her individual and official capacity.

Finally, plaintiff has sued J.B. Wascom and Sheri Chipman, individual residents of Texas who are husband and wife (collectively, "Wascom defendants").

This matter is before the Court on the Rowlett defendants' motion to dismiss for lack of personal jurisdiction (Doc. No. 17), motion to dismiss for failure to state a claim (Doc. No. 18), and a further motion to dismiss for failure to state a claim. (Doc. No. 19). The Rowlett defendants have also filed a motion to excuse appearance at the case management conference. (Doc. No. 20.) Also before the Court are the Rockwall defendants' motion to dismiss for lack of jurisdiction and failure to state a claim (Doc. No. 22), and motion to excuse appearance at the case management conference. (Doc. No. 24.) Finally, two motions by plaintiff are before the Court: plaintiff's motion to dismiss the City of Akron; City of Rowlett, Texas; County of Rockwall, Texas; and Kenda Culpepper as defendants (Doc. No. 27), and plaintiff's motion for leave to file a sur-reply. (Doc. No. 33.)

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The motions to dismiss for lack of jurisdiction and for failure to state a claim require the Court to view the facts in the light most favorable to the plaintiff.[1] Accordingly, the Court presents the factual history in the light most favorable to Haley, recounting the facts as alleged in Haley's complaint and responsive pleadings.

This dispute centers on a 2009 black Corvette with VIN 1G1YY36W995111051 ("the Corvette"). Haley acquired the Corvette in Texas in July 2009 from Nomad Preservation, Inc. ("Nomad"), in exchange for services provided to the company. (Doc. No. 1 at 7.) According

---

[1] On a motion to dismiss for lack of personal jurisdiction, the Court views the pleadings and other evidence in the light most favorable to the plaintiff. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court takes all well-pleaded allegations in the complaint as true and construes those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

to the terms of the exchange, Nomad was to continue making payments on the Corvette and to insure it under its own umbrella policy. (*Id*. at 8.) Haley received the vehicle in Akron in August 2009 and drove it without major incident until January 31, 2011.

Before describing the events of January 31, 2011, the Court must journey to Texas. There, in December 2010, the City of Rowlett and its police department engaged in a series of interactions with J.B. Wascom, a Texas resident. Wascom's business relationship with Nomad had soured, to say the least. Wascom told police officers that he possessed a Texas state court judgment against Nomad, ordering that several vehicles, including the Corvette, be returned to Wascom in December 2010. (Doc. No. 30 at 238.) During his initial conversation with Wascom, Jeff Freeman, a Rowlett police officer, was told that the Corvette was in Akron, Ohio in plaintiff's possession. (*Id*.) Freeman opened a criminal matter. In the same month, Wascom traveled to Ohio to track the Corvette. There, local police told him that "they would recover the vehicle if entered on [the National Crime Information Computer] NCIC." (Doc. No. 30-4 at 267.) Wascom relayed this information to Freeman. Upon consultation with the Rockwall County District Attorney's office, however, Freeman categorized the matter as civil, recommended that the criminal case be closed, and advised Wascom to pursue civil remedies.

Yet, this did not end "l'affaire de Corvette". In early 2011, Wascom again informed Freeman that he obtained a final judgment in a civil case regarding the Corvette. Wascom and his wife, Sheri Chipman, informed Freeman that the Corvette was registered to Chipman, that she had the original title to the vehicle, and that she had been making payments on the vehicle the entire time. (Doc. No. 30-4 at 268.) Once more, Freeman consulted with the Rockwall County District Attorney's office and received the following advice from Civil Chief Jon Thatcher: "it was still in a grey area however there is enough evidence to enter the vehicle on

3

NCIC as stolen." (*Id.*) With the belief that "the vehicle [is] in the possession of Stephen Haley . . . in Akron[,] Ohio," Freeman entered the vehicle on NCIC as stolen and notified OnStar.[2] (*Id.*) All parties agree that the report[3] received by Akron police specified that the driver of the Corvette was not to be arrested, no holds were to be placed on the Corvette, and the Corvette was to be towed. (Doc. No. 30-4 at 261.)

This brings the story back to January 31, 2011. While driving the Corvette, plaintiff was pulled over by five Akron Police Department patrol cars. He was removed from the vehicle at gunpoint, handcuffed, and placed in the back of a patrol cruiser. (Doc. No. 1 at 8.) The arresting officer, James Alexander, spoke with Freeman on the phone. Freeman apprised Alexander of the following facts: that there was a civil judgment on the Corvette, that Thatcher had counseled him to report the Corvette as stolen, but that Haley was not to be arrested. The patrol cruiser deposited Haley at his home, where several neighbors witnessed him emerge from the back of a patrol car. The Corvette was towed.

Plaintiff, proceeding *pro se*, filed the instant action on January 31, 2013, against the defendants listed above. In his complaint, plaintiff alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983, as well as debt collection violations of 15 U.S.C. § 1962. (Doc. No. 1 at 13-18.) The Wascom defendants and the Akron defendants have filed answers to the complaint. (Doc. Nos. 11, 23, respectively.)

---

[2] OnStar Corporation is a subsidiary of General Motors that offers, among other services, vehicle security.
[3] Akron police received this report from the "law enforcement automated data system" (LEADS). (Doc. No. 30-3 at 261.) *See* Ohio Admin. Code 4501:2-10-01(V).

4

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Certain Parties

Several motions currently pending are affected by plaintiff's motion to dismiss certain defendants (Doc. No. 27). Accordingly, the Court addresses this motion first.

Plaintiff moves to dismiss without prejudice his claims against defendants City of Akron, City of Rowlett, County of Rockwall, and Kenda Culpepper pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. Under Rule 41(a)(2), "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Whether dismissal should be granted under this Rule's authority "is within the sound discretion of the district court." *Grover ex rel. Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994). By its plain language, however, Rule 41(a)(2), which addresses dismissal of "an *action*," is inapplicable here, where the plaintiff seeks to dismiss four *parties* to the action, while maintaining the action itself. Dismissal of individual parties properly occurs under Rule 21, which provides, in relevant part: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Accordingly, the Court construes plaintiff's motion to dismiss as a motion to drop four parties under Rule 21 and grants same. Plaintiff's claims against the City of Akron, the City of Rowlett, Texas, the County of Rockwall, Texas, and Kenda Culpepper are DISMISSED and these defendants are DISMISSED AS PARTIES.

5

B.      Motions to Dismiss for Lack of Personal Jurisdiction

The Rowlett defendants (Doc. No. 17) and the Rockwall defendants (Doc. No. 22) challenge this Court's power to exercise personal jurisdiction over them pursuant to Federal Rule of Civil Procedure 12(b)(2). Because the Court has dismissed the City of Rowlett, the County of Rockwall, and Kenda Culpepper as parties, it need only consider its personal jurisdiction over Freeman, Walling, and Thatcher. As to each defendant, the Court may not exercise jurisdiction unless Ohio law authorizes service of process on the defendant. Further, any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012); *see also Kauffman Racing Equip., LLC v. Roberts*, 126 Ohio St. 3d 81, 85, 930 N.E.2d 784 (2010) (setting forth a two-step jurisdictional analysis: "(1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law"). Personal jurisdiction is neither an "idle" nor a "perfunctory" requirement; rather, it allows potential defendants to conduct themselves with some minimum assurance as to where that conduct will and will not render them liable to suit. *Conn*, 667 F.3d at 711 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). The Court may address the two requirements in any order.

On a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court has three procedural alternatives: (1) decide the motion on affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When, as here, the Court decides the motion upon the parties' written submissions, it

6

must view the affidavits, pleadings and related documentary evidence in the light most favorable to the plaintiff;[4] however, he alone must establish, "a 'prima facie' case that the court has personal jurisdiction." *Conn*, 667 F.3d at 711 (citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)). Favorability to plaintiff notwithstanding, the Court is not precluded from considering undisputed factual representations of the defendant that are consistent with the representations of the plaintiff. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).

      1.     Personal Jurisdiction under the Due Process Clause

The Due Process Clause requires that the non-resident defendant have such sufficient minimum contacts with the forum state that finding personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *Conn*, 667 F.3d at 712 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 2d 95 (1945)). Two kinds of personal jurisdiction nestle under the Due Process Clause: general jurisdiction[5] and specific jurisdiction. *Id*. at 712–13. Only specific jurisdiction—wherein plaintiff's claims arise out of or relate to a defendant's contacts with the forum state—is alleged in this case. The Sixth Circuit's test for specific jurisdiction has remained unchanged since 1968:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of

---

[4] The Court accepts all of plaintiff's assertions and evidence as true, defendants' arguments as to proper authentication notwithstanding. The point quickly becomes moot, as the Court is dismissing the Rowlett and Rockwall defendants.

[5] General jurisdiction exists when the non-resident defendant's contacts with the state are so "continuous" and "systematic" that a court may exercise personal jurisdiction over the defendant even if the suit does not arise out of the defendant's contacts with the forum state. *Conn*, 667 F.3d at 712–13 (citing *Helicopteros Nacionales de Colombia , S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). No such allegation is made here.

jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The Court will address each requirement in turn.

### a. Purposeful Availment under *Southern Machine*

The *sine qua non* of personal jurisdiction, purposeful availment is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," such that he "should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). A connection resulting from "random," "fortuitous," or "attenuated" contacts or the unilateral activity of another will not suffice: "significant activities" or "continuing obligations" between the defendant and the forum state are required. *Burger King*, 471 U.S. at 475. Plaintiff's mere allegation that he has been harmed in the forum state by defendant's out-of-state intentional tortious conduct, "does not, by itself, always satisfy the purposeful availment prong." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

To get to the point: Did the Texas law enforcement officials purposefully avail themselves of Ohio law enforcement and Ohio laws? The issue, in this context, has never been taken up by the Sixth Circuit. Other courts have, however, heard allegations that out-of-state law enforcement officials have purposefully availed themselves of the forum state's laws in violating plaintiff's constitutional rights, generally through unlawful arrests. Within this circuit, the Southern District of Ohio has twice held that out-of-state law enforcement officials were not subject to the court's personal jurisdiction. In *Cook v. Holzberger*, 788 F. Supp. 347 (S.D. Ohio

8

1992), the court determined that it lacked jurisdiction over Michigan defendants who arrested plaintiff in Michigan pursuant to an Ohio arrest warrant. Contacts with Ohio were limited to "entering [plaintiff's] name into the computer" in Michigan and "arrest[ing] [plaintiff] upon finding the entry" of an outstanding warrant. *Id*. at 351. Though the Michigan defendants communicated with Ohio law enforcement regarding plaintiff's extradition to Ohio, there was no "on-going relationship with the forum state" that would provide a basis for personal jurisdiction. *Id*. *See also Livingston v. Redwine*, No. 1:06cv337, 2007 WL 2713857 (S.D. Ohio Sept.17, 2007) (no personal jurisdiction when Kentucky defendants allegedly received a vehicle stolen from an Ohio resident in Kentucky but committed no acts and had no contacts in Ohio). Under more extreme factual circumstances, the Eastern District of Tennessee reached the opposite conclusion and exercised jurisdiction. *Johnson v. Wichita Cnty., Tex. Sheriff's Office*, No. 1:12-CV-394, 2013 WL 3833667 (E.D. Tenn. July 23, 2013). In *Johnson*, out-of-state law enforcement officers bristled at plaintiff's "alleged misdeeds in a prior business relationship," "contacted Tennessee officials to seek [p]laintiff's arrest," "sought confiscation of [plaintiff's] property related to the personal business relationship," and "maintained contact with Tennessee officials throughout the process." *Id*. at *9. Purposeful availment, the Court "confident[ly]" concluded, was present when out-of-state law enforcement used "the fugitive warrant system for personal reasons." *Id*.

Outside the circuit, posting warrants and interacting with the forum state only after the warrant is executed, is not usually viewed as purposeful availment. For example, a New York court wrote, "all that Plaintiffs have alleged is that the [out-of-state law enforcement officials] issued an arrest warrant for [plaintiff] *before* he moved to New York, that the warrant was lodged in some nationwide database (presumably NCIC)[,] that the warrant led to [plaintiff's] arrest in New York after he was stopped by New York officials on a traffic violation,

9

and that nobody from the [out-of-state law enforcement] asked New York officials to assist in the extradition (let alone the arrest) of [plaintiff]." *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 334 (S.D.N.Y. 2013). Such general conduct, confined to another state, did not establish purposeful availment of New York's law enforcement or laws, even though plaintiff felt the injury in New York. *See also Snyder v. Snyder*, Civil No. 063072(DSD/JJG), 2007 WL 894415 (D. Minn. Mar. 21, 2007) ("Posting a warrant on the NCIC system is not an act of purposeful availment."); *Williams v. Cook Cnty. Sherriff's Dep't*, 93 C 212, 1995 WL 75386 (N.D. Ill. Feb. 22, 1995) (no purposeful availment when only contact with Illinois was phone call). Similarly, when out-of-state law enforcement's actions in South Carolina were limited to filing forms in and making telephone calls to South Carolina, there was no purposeful availment. *Ray v. Simon*, Civil Action No. 4:07-1143-TLW-TER, 2008 WL 5412067 (D.S.C. Dec. 24, 2008). To hold otherwise, the court feared, would signal that "all discussions between prosecutors attempting to obtain extradition or information about a defendant would satisfy personal jurisdiction requirements in a foreign jurisdiction in a subsequent civil action." *Id.* at *16 (citation omitted).

Other courts, particularly courts within the Third Circuit, set a lower bar for purposeful availment for law enforcement officials. When an out-of-state law enforcement official directs a fugitive warrant to the forum state with the intent that forum state authorities apprehend a suspect, the out-of-state official, according to a Pennsylvania court, avails himself of the forum state's law enforcement. *Lohman v. Township of Oxford*, Civ. A. No. 91-7037, 1992 WL 95914 (E.D. Pa. Apr. 22, 1992); *see also Adelphin v. Camacho*, No. 98-6299, 1999 WL 301805, at *4 (E.D. Pa. May 11, 1999) (purposeful availment when new Jersey defendants used Pennsylvania law enforcement agents to secure plaintiff's arrest by faxing the arrest warrant "with the intent that Pennsylvania authorities would arrest and detain plaintiff" until plaintiff's

extradition). A California court similarly held that out-of-state law enforcement officials purposely avail themselves of the forum state when they contact the forum state's officials and request an arrest. *Gregory v. City of Palo Alto*, No. C-94-20008-JW, 1994 WL 695421 (N.D. Cal. Dec. 8, 1994).

The Court's research found only one court of appeals that has squarely addressed the issue: the Ninth Circuit. *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), *overruled on other grounds as recognized by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). New York law enforcement officials "took the 'deliberate actions' of requesting that the LAPD arrange the extradition of a purported fugitive, using the California criminal justice system to accomplish the extradition, sending the LAPD an identification packet to facilitate the extradition, regularly communicating with the LAPD during the extradition process, and traveling to Los Angeles to escort the purported fugitive back to New York." *Id.* at 693. The Ninth Circuit ruled that those New York defendants who participated actively in the plaintiff's extradition to New York had "purposefully availed themselves of the privilege of conducting activities in California." *Id.* at 694.

Whether the Texas defendants purposefully availed themselves of Ohio law enforcement officials and Ohio laws is a question peculiar to each defendant.

11

i.       Purposeful Availment and the Rowlett Defendants

The remaining Rowlett defendants are Matt Walling, the Chief of the Rowlett City Police, and Jeff Freeman, a detective for the City of Rowlett. In his brief in opposition to the Rowlett defendants' motion to dismiss for lack of personal jurisdiction, Haley alleged the following facts to support jurisdiction as to the Rowlett defendants:

1. On December 12, 2010 [Freeman] was dispatched . . .  to contact J.B. Wascom . . . . Wascom indicated and presented a judgment entry from Rockwall County which required the return of three (3) vehicles; one being the 2009 Black Corvette given to Plaintiff as payment for services. During the interview Wascom stated that the 2009 black Corvette was in the possession of Stephen Haley in Akron Ohio. . . .

3. On December 14, 2010, Det. Freeman went to the Rockwall County District Attorney's Office and advised a prosecutor working in that office as to the circumstances concerning Wascom and the black Corvette located in Ohio and in Plaintiff's possession. The prosecutor advised Det. Freeman that if the vehicle was awarded in civil court then Wascom needed to go through civil court to seek a remedy . . . .

4. On December 20, 2010, . . . Wascom stated that he had spoken with the Akron Police Department who indicated they would recover the vehicle if it was entered on NCIC … Det. Freeman then indicated in the investigative report . . .  that the circumstances do not warrant the 2009 black Corvette being entered onto NCIC As [sic] stolen.

5. On January 27, 2011 Det. Freeman was once again contacted by Wascom…. Det. Freeman stated to Wascom that he would need to contact the Rockwall District Attorney to see if they felt this was a criminal matter. Det. Freeman stated he went to the Rockwall District Attorney's office and spoke with Civil Chief Jon Thatcher. Thatcher advised that it was still a grey area however there is enough evidence to enter the vehicle on NCIC as stolen. The 2009 black Corvette is believed to be in the possession of Stephen Haley in Akron Ohio. The vehicle was entered on NCIS [sic] and on-star was notified.

6. On January 31, 2011 Det. Freeman was notified by the Akron Police Department that the vehicle had been recovered. . . .

7. On January 31, 2011 APD officer Alexander stated in his report that they were notified by on-star that the listed stolen auto was driving in the City of Akron. The notes on the LEADS stated not to arrest the driver, not to place any holds on the 2009 black Corvette, and requested that the APD tow the vehicle. The report states that officer Alexander called Det. Freeman at the Rowlett Police Department. Det. Freeman stated that it was a civil matter and that that [sic] his department did not want to seek charges against Mr. Haley.

12

(Doc. No. 30 at 238–39 (emphasis in original).) To support these allegations, Haley provided the police report written by Freeman ("the Rowlett report"). The Rowlett report indicates that Freeman knew the Corvette was located in Ohio from his first involvement in the matter. (Doc. No. 30-4 at 266.) Accordingly, Freeman did not release the stolen car report into the ether, to be seized upon by officials in an unknown and unknowable state. Rather, he was told that local Akron police "would recover the vehicle if entered on NCIC."[6] (Doc. No. 30-4 at 267.) Thus, construing the facts in favor of plaintiff, as the Court is required to do, Freeman's act of reporting the car as stolen on NCIC upon the suggestion from the Akron police reached out to the Akron police, using them to bring the Corvette back to Texas. Freeman's course of conduct, from his first investigation to his instruction to Alexander to take the car but leave its driver, was undertaken with the express purpose of returning the Corvette to Texas through Ohio law enforcement. Under Haley's prima facie burden to show jurisdiction, he has established Freeman's purposeful availment of the laws of Ohio.[7]

As to Rowlett defendant Matt Walling, plaintiff states little. Indeed, the complaint does no more than provide Walling's name and position and accuse him of failure to train Freeman and of adopting and implementing policies that violated plaintiff's rights. (Doc. No. 1 at 16.) There is no allegation that Walling has ever had any kind of relationship with Ohio. His

---

[6] In construing the complaint and pleadings in favor of plaintiff, the Court views this statement as an accurate transmission to Freeman of the instructions given by the Akron police.

[7] The recent Supreme Court decision in *Walden v. Fiore*, No. 12-574, -- S. Ct. --, 2014 WL 700098 (Feb. 25, 2014), does not change this result. In *Walden*, the Supreme Court determined that seizure of Fiore's property in Georgia did not subject Walden to jurisdiction in Nevada, Fiore's place of residence. The Georgia seizure was "not connected to the forum State in a way that makes [the seizure] a proper basis for jurisdiction. *Id.* at 13. Fiore was injured in Nevada, "not because anything independently occurred there, but because Nevada is where [Fiore] chose to be at a time when [Fiore] desired to use the funds seized by [Walden]." *Id.* at 12. In this case, Freeman directed the seizure to occur in Ohio, the forum state. Thus, Haley suffered injury in Ohio, not because he chose to be in Ohio when he desired to drive the Corvette, but because the seizure "independently occurred there[.]" *Id.*

position as Freeman's supervisor and purported failure to train Freeman do not, without more, establish purposeful availment. *See Stevens v. Hayes*, No. A-11-CA-550 LY, 2012 WL 2572790, at \*9 (W.D. Tex. July 2, 2012) ("The mere allegation that Governor Richardson failed to train federal employees is inadequate to demonstrate Governor Richardson purposefully availed himself of the privilege of conducting activities within [another state.]")

> ii.     Purposeful Availment and the Rockwall Defendants

The sole remaining Rockwall defendant is Jon Thatcher, the Civil Chief for Rockwall County. In his brief in opposition to the Rockwall defendants' motion to dismiss for lack of personal jurisdiction, Haley alleges the following facts to support jurisdiction as to the Rockwall defendants:

> 3. On December 14, 2010, Det. Freeman went to the Rockwall County District Attorney's office and advised a prosecutor working in that office[8] as to the circumstances concerning Wascom and the black Corvette located in Ohio and in Plaintiff's possession. The prosecutor advised Det. Freeman that if the vehicle was awarded in civil court then Wascom needed to go through civil court to seek a remedy. Det. Freeman stated in the investigative report that he called Wascom and told him that this was a civil matter.
> 4. On December 20, 2010, . . . Det. Freeman recommended that due to the case being civil the Rockwall District Attorney would not take a criminal case in the matter; and that the circumstances do not warrant the 2009 black Corvette being entered onto NCIC As [sic] stolen.
> 5. On January 27, 2011 Det. Freeman was once again contacted by Wascom who indicated that he had received a final judgment and needed to contact the local police department to investigate the 2009 black Corvette. Det. Freeman stated to Wascom that he would need to contact the Rockwall District Attorney to see if they felt this was a criminal matter. Det. Freeman stated he went to the Rockwall District Attorney's office and spoke with civil chief Jon Thatcher. Thatcher advised that it was still a grey area however there is enough evidence to enter the vehicle on NCIC as stolen. The 2009 black Corvette is believed to be in the possession of Stephen Haley in Akron Ohio. The vehicle was entered on NCIS [sic] and on-star was notified.

---

[8] This prosecutor was not Jon Thatcher. Haley does not claim that this prosecutor was Thatcher or even that Thatcher knew about this conversation. The Rowlett report gives the prosecutor's name as "Ashley." (Doc. No. 30-4 at 267.)

(Doc. No. 30 at 238–39.) Neither Haley's recitation of the facts nor the evidence he attached to his brief in opposition points to a single activity of Thatcher directed to Ohio. He states that Freeman spoke to Thatcher about the Corvette, but does not allege that Thatcher ever knew the Corvette was in Ohio. In the Rowlett report, Freeman states only this with respect to Thatcher: "I/O went to the Rockwall DA office and spoke with Civil Chief Jon Thatcher. Thatcher advised that it was still in a grey area however there is enough evidence to enter the vehicle on NCIC as stolen." (Doc. No. 30-4 at 268.) Based upon the report, it appears that *Freeman* knew that the Corvette was in Haley's possession in Akron, Ohio. (*See id.* ("The vehicle is believed to be in the possession of Stephen Haley … in Akron Ohio.")) There is simply no evidence, however, that Thatcher knew the car's location and aimed to use Ohio law enforcement to recover the Corvette. His recommendation to enter the Corvette as stolen was not directed to Ohio. He released his recommendation into the ether to be acted upon by officials in an unknown and unknowable state. Courts have consistently found this kind of activity beneath the threshold of purposeful availment. *See, e.g.*, *Snyder v. Snyder*, Civil No. 063072(DSD/JJG), 2007 WL 894415 (D. Minn. Mar. 21, 2007).

### b. "Arising From" under *Southern Machine*

Under the Sixth Circuit's second requirement for specific jurisdiction, the plaintiff's cause of action must "arise from" the defendant's contacts with the forum state. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267 (citation omitted). This factor requires only that "the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (citation omitted). Even slight acts of

15

purposeful availment can support personal jurisdiction when the acts form the basis for the action. *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) ("[M]aking phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action.").

i.      "Arising From" and the Rowlett Defendants

Haley's claim arose directly from Freeman's contacts with the forum state. Freeman encouraged the Akron police to take Haley's car by entering the Corvette on NCIC as a stolen vehicle after Wascom was advised by Akron police that the listing would be necessary for them to take action to recover the vehicle in Ohio. Haley's claim arises out of the confiscation of the Corvette due to its listing on NCIC. Freeman's forum activities correspond precisely to Haley's cause of action. In short, Freeman's forum activities, though slight, led directly to Haley's cause of action. Rowlett defendant Walling, on the other hand, has no forum activities.

ii.      "Arising From" and the Rockwall Defendants

The lone remaining Rockwall defendant, Thatcher, has no forum activities. There is no allegation that he had knowledge of Haley or that Haley resides in Akron. Haley's cause of action cannot arise out of Thatcher's Ohio activities because there are no Ohio activities.

c. Reasonableness under *Southern Machine*

If the first two prongs of the *Southern Machine* test are met, a court must then determine if jurisdiction is reasonable, considering the following four factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005). Reasonableness is inferred if *Southern Machine*'s first two prongs are met, and only "the unusual case will not meet this third criteria."

16

*Air Prods. & Controls*, 503 F.3d at 554 (quoting *Theunissen*, 935 F.2d at 1461. If the first two prongs are lacking, the inference of reasonableness is not warranted.

Describing the reasonableness factors, the Sixth Circuit has found, if defendants reside in other states, they are burdened by litigating in Ohio; yet, specific jurisdiction may be proper. *Id*. Further, when an Ohio resident's rights are jeopardized, Ohio has an interest "in protecting its residents' legal options." *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003). Finally, when plaintiff has an interest in obtaining relief, "it would likely be most convenient for [plaintiff] to seek relief in Ohio where [plaintiff] now resides." *Wiltz v. New Jersey*, Civil Action No. 2:09-cv-00592, 2010 WL 3659038, at *8 (S.D. Ohio Sept. 14, 2010).

i. Reasonableness and the Rowlett Defendants

As a resident of Texas, Freeman would be substantially burdened by litigating in Ohio. This burden, however, is outweighed by other concerns. First, having met *Southern Machine*'s first two prongs, plaintiff is entitled to an inference of reasonableness, which tips the balance in his favor. Plaintiff also has an interest in obtaining relief in Ohio, his state of residence and the state in which the alleged deprivation occurred. Finally, Ohio has an interest in resolving this controversy, one in which Ohio law enforcement officials were co-opted by residents of another state to execute a civil judgment, taking property in the possession of an Ohio citizen. The balance of factors convinces the Court that exercising jurisdiction over Freeman would be reasonable.

As to Rowlett defendant Walling, the first two prongs of the *Southern Machine* test are not met. Thus, plaintiff is not entitled to an inference of reasonableness. Without that inference, and considering the burden on Walling of litigating in a state to which he did not purposefully direct his activities, personal jurisdiction over Walling would be unreasonable.

ii. Reasonableness and the Rockwall Defendants

Again, when the first two prongs of the *Southern Machine* test are not met, plaintiff is not entitled to an inference of reasonableness. Without that inference, and considering the burden on Thatcher of litigating in a state to which he did not purposefully direct his activities, personal jurisdiction over Thatcher, the lone remaining Rockwall defendant, would be unreasonable.

Under the due process clause, exercising jurisdiction over defendants Thatcher or Walling would be unconstitutional. The Court may, however, constitutionally exercise jurisdiction over defendant Freeman.

2.      Personal Jurisdiction under Ohio's Long-Arm Statute

Having concluded the due process half of the personal jurisdiction inquiry, the Court must now determine whether the Ohio long-arm statute, Ohio Rev. Code § 2307.382, and the applicable rule of civil procedure, Rule 4(k)(1)(A), confer jurisdiction on this Court. *See Kauffman*, 126 Ohio St. 3d at 85 (personal jurisdiction present if conferred by long-arm statute and applicable rule of procedure); Fed. R. Civ. P. 4(k)(1)(A) (serving summons establishes jurisdiction if defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). Thus, Haley must show that Ohio's long-arm statute authorizes personal jurisdiction over the defendants.

Ohio's long-arm statute does not extend to the limits of the due process clause.

*Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 638 N.E.2d 541, 545 n.1 (1994). The statute endorses nine heads of jurisdiction, only one of which, the sixth, is alleged in this case. (Doc. No. 25 at 184.) Under the sixth head of jurisdiction, a court "may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's" "[c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]" Ohio Rev. Code § 2307.382(A)(6). All subparts of the statute must be met: (1) there must be a tortious injury (2) by an act committed with the purpose of injuring persons and (3) with the reasonable expectation that someone would be injured in Ohio. When, for example, the plaintiff alleges negligence rather than injurious purpose, the plaintiff has not satisfied the long-arm statute. *Oxford Lending Grp., LLC v. Underwriters at Lloyd's London*, No. 2:10-cv-94, 2011 WL 335954 (S.D. Ohio Jan. 31, 2011) (requirements of Ohio long-arm statute not met when plaintiff alleged that defendant's *negligence* permitted others to perpetrate fraud on plaintiff).

Because district courts take a "broad approach" in applying (A)(6), out-of-state actions that give rise to tortious injuries for purposes of the statute are legion. *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012). Acts of conversion, *Innovative Digital Equip., Inc. v. Quantum Tech., Inc.*, 597 F. Supp. 983, 987 (N.D. Ohio 1984); copyright infringement, *Stolle Mach. Co., LLC v. RAM Precision Indus.*, No. 3:10-cv-155, 2011 WL 6293323 (S.D. Ohio Dec. 15, 2011); using proprietary information, *id.*; misusing trade secrets, *Safety Today, Inc. v. Roy*, No. 2:12-cv-150, 2012 WL 2374984 (S.D. Ohio June 22, 2012); misappropriating client lists and contacting customers, *Coast to Coast Health Care Srvs., Inc. v. Meyerhoffer*, No. 2:10-cv-734, 2012 WL 169963 (S.D. Ohio Jan. 19, 2012); false representations, *Vlach v. Yaple*, 670 F. Supp.

2d 644 (N.D. Ohio 2009); fraudulent communications, *Odom Indus., Inc. v. Diversified Metal Prods., Inc.*, No. 1:12-cv-309, 2012 WL 4364299 (S.D. Ohio Sept. 24, 2012); and defamatory online postings, *Kauffman Racing Equip., LLC v. Roberts*, 126 Ohio St. 3d 81, 930 N.E.2d 784 (2010); all meet the requirements of (A)(6).

While the Ohio Supreme Court has not explicitly stated that a § 1983 violation is the kind of tortious injury covered by Ohio Rev. Code § 2307.382(A)(6), the Court concludes that it is. Both the Ohio Supreme Court and district courts interpreting its precedents have held that tortious injuries, for purposes of the long-arm statute, include statutory violations. *See Clark v. Connor*, 82 Ohio St. 3d 309, 695 N.E.2d 751 (1998) (breaching non-disclosure contracts and violating Ohio's Uniform Trade Secrets Act gave rise to tortious injury under long-arm statute); *Vlach*, 670 F. Supp. 2d at 648 (alleged violations of Fair Debt Collections Practices Act and Ohio Consumer Sales Protection Act were (A)(6) tortious injuries). Defendants do not argue and the Court sees no reason to conclude that an alleged § 1983 violation is not a tortious injury for purposes of Ohio Rev. Code § 2307.382(A)(6).[9] For purposes of (A)(6), Haley allegedly suffered a tortious injury.

Haley must also show that defendants acted with the intent to injure him and with the expectation that he would be injured in Ohio. As alleged by Haley, Freeman acted with the purpose of divesting Haley of the Corvette, the alleged injury, and arguably knew at all times that the Corvette probably was in Ohio, where the loss was felt. Viewing the facts in the light

---

[9] This accords with the decisions of other courts faced with the same issue. *See, e.g.*, *Overby v. Johnson*, 418 F. Supp. 471 (E.D. Mich. 1976) ("action for tort" in Michigan's long-arm statute included § 1983 claims); *Kolar v. Sangamon County of State of Ill.*, 756 F.2d 564, 567 (7th Cir. 1985) (§ 1983 is "statutory species of tort"); *Magid v. Marcal Paper Mills, Inc.*, 517 F. Supp. 1125 (D. Del. 981) (ADEA violation is a tortious injury under Delaware long-arm statute); *Lohman v. Township of Oxford*, Civ. A. No. 91-7037, 1992 WL 95914 (E.D. Pa. Apr. 22, 1992) (§ 1983 violation is tort or harmful action under long-arm statute).

most favorable to Haley, as this Court must, the requirements of Ohio Rev. Code § 2307.382(A)(6) are thus met as to Freeman. Because the Court has already concluded that jurisdiction cannot be constitutionally exercised over the Rockwall defendants or defendant Walling, it need not address the long arm statute with respect to those defendants.

In light of the above analysis, the Rowlett defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. The Court lacks jurisdiction over defendant Walling, and he is DISMISSED AS A PARTY. The Court may, however, exercise jurisdiction over Freeman. The Rockwall defendants' motion to dismiss is GRANTED and Thatcher, the only remaining Rockwell defendant, is DISMISSED AS A PARTY.

C.     The Motions to Dismiss for Failure to State a Claim

The Rowlett defendants have filed two motions to dismiss. (Doc. Nos. 18, 19.)[10] Both motions seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The first was filed by Rowlett defendants Walling and Freeman in their individual capacities, who each assert the defense of qualified immunity. The latter, filed by Rowlett defendants Walling and Freeman in their official capacities, as well as the City of Rowlett itself, seeks dismissal on the basis of plaintiff's failure to state a claim for municipal liability. Because the Court has

---

[10] Because the Court cannot exercise personal jurisdiction over the Rockwall defendants, it need not consider the Rockwall defendants' alternative motion to dismiss. (Doc. No. 22.)

dismissed Walling and the City of Rowlett as parties,[11] it need only consider the motions as asserted by Freeman. The Court addresses each motion in turn.

1. Standard of Review on Rowlett Motions to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citations omitted). Complaints filed by a *pro se* plaintiff must be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Estelle v. Gamble*, 429 US. 97, 106, 797 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 686 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*,

---

[11] The Court here notes that, though it has dismissed all claims against Rowlett defendant Walling for lack of personal jurisdiction, the claims against Walling must fail under § 1983 as well. Specifically, respondeat superior does not provide a basis for liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rather, plaintiff must show that Walling himself violated the Constitution. At the very least, Walling must have "encouraged the specific incident or misconduct or in some other way directly participated in it." *Cardinal v. Metrish*, 564 F.23d 794, 802–03 (6th Cir. 2002). No such allegation was made here.

355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts"). This requirement applies to all plaintiffs, including those proceeding *pro se*. *See Garrett v. Belmont Cnty. Sheriff's Dept.,* No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. Apr. 1, 2010); *Nat'l Bus. Devel. Serv., Inc. v. American Credit Educ. and Consulting, Inc.,* 299 F. App'x 509, 511 (6th Cir. 2008).

2.   Haley's complaint fails to state a claim against Freeman in his individual capacity.

In his first motion to dismiss (Doc. No. 18), Freeman, in his individual capacity, asserts that plaintiff has failed to state a claim upon which relief can be granted and that, in any event, qualified immunity bars plaintiff's claims. Qualified immunity is "an affirmative defense that shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gean v. Hattaway*, 330 F.3d 758, 767 (6th Cir. 2003).[12] A state official sued in his individual capacity enjoys qualified immunity from damages liability "when two questions have been answered: (1) Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?; and (2) if

---

[12] Qualified immunity applies when state officials perform discretionary functions. *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 631 n.7 (6th Cir. 2012). Crafting a remedy for "unusual circumstances," rather than following a standard policy or procedure, falls within the range of discretionary government functions.

23

the answer to the first question is yes, we must decide whether the violated right was clearly established." *Gunasekera v. Irwin*, 551 F.3d 461, 471 (6th Cir. 2009) (citation omitted). Plaintiff must show that his constitutional right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Thomas v. Cohen*, 304 F.3d 563, 569 (6th Cir. 2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). If a reasonable official could have disagreed, defendant Freeman is entitled to qualified immunity. *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 632 (6th Cir. 2012). The two steps may be addressed in any order: courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Whatever the order, plaintiffs bear the burden of defeating defendant's assertion of qualified immunity. *Thomas*, 304 F.3d at 569.

Construing plaintiff's pro se complaint liberally, plaintiff alleges that Freeman, in his individual capacity, violated plaintiff's following constitutional rights: (1) Fourth Amendment right to be free from unreasonable searches and seizures; and (2) Fourteenth Amendment right to be afforded due process of the law. As to each violation, plaintiff must show that Freeman violated the constitutional right at issue and that the right was clearly established. In an abundance of caution, the Court will also address the plaintiff's purported Fifth Amendment claim against Freeman. Finally, the Court will address the conspiracy claims against Freeman.

24

a. Fourth Amendment Claim Against Freeman

Count II of plaintiff's complaint alleges that plaintiff's "false arrest" violated his rights under the Fourth, Fifth, and Fourteenth Amendments. The Court construes this claim as a claim of false arrest under the Fourth Amendment. The Fourth Amendment prohibits unreasonable searches and seizures. In the context of a § 1983 claim for false arrest, a seizure is reasonable when it is based on probable cause, i.e. when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Palmer v. Town of Jonesborough*, No. 2:08-cv-345, 2009 WL 1255780, at *5 (E.D. Tenn. May 1, 2009) (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S. Ct. 1302, 93 L. Ed. 2d 1879 (1949)). Claims for false arrest under § 1983 only lie against officers who participate in an arrest. *Id.* (citing *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999)).

Haley was, accepting the allegations in the complaint as true, ordered out of the Corvette at gunpoint and placed in the back of the Akron defendants' patrol cruiser. He was taken home in the patrol cruiser. He was never arrested, despite his protestations to the contrary. While he was indisputably detained, Haley was not detained by Freeman, the remaining Rowlett defendant. Haley freely admits that Freeman specifically instructed the Akron defendants not to arrest Haley. The decisions regarding Haley's brief detention were the decisions of the Akron defendants alone and cannot be attributed to Freeman. Because Haley cannot assert a Fourth Amendment claim against Freeman, such claim is DISMISSED.

b. Fourteenth Amendment Claim Against Freeman

Count Three of plaintiff's complaint alleges that Freeman, among various other defendants, deprived him of property without due process of law in violation of the Fifth and Fourteenth Amendments.[13] Under the Fourteenth Amendment, a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Cont. amend. XIV. To state a due process violation, plaintiff must have a liberty or property interest entitled to due process protection. Only thereafter will the Court determine what process is due. *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004).

There are two ways in which to plead a procedural due process claim: (1) deprivation of property as a result of an established state procedure that violates due process rights; or (2) deprivation of property pursuant to a random and unauthorized act. *Maddox v. City of Shaker Heights*, No. 1:12-cv-1828, 2012 WL 5878088, at *7 (N.D. Ohio Nov. 20, 2012) (citing *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991)). Deprivation of property pursuant to a random and unauthorized act does not violate plaintiff's constitutional right to procedural due process if the state provides satisfactory procedures. *Id.* Relief under § 1983 is available only when plaintiff has first pled and proven the inadequacy of state or administrative processes and remedies to redress alleged due process violations. *Rodgers v. 36th Dist. Ct.*, 529 F. App'x 642, 649-50 (6th Cir. 2013). State processes are not necessarily inadequate if they are not identical to § 1983 remedies. *Wilson v. Beebe*, 770 F.2d 578, 583 (6th Cir. 1985) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)).

---

[13] Plaintiff attempts to allege deprivation of due process under the Fifth Amendment, a claim which is not cognizable against state officials. *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) ("[T]he Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."). The Court therefore construes the complaint to allege due process violations only under the Fourteenth Amendment.

In his complaint, plaintiff does not allege that defendants followed an established procedure. Indeed, plaintiff takes great pains to point out the novelty of the Rowlett and Rockland defendants' conduct in obtaining the Corvette. Plaintiff alleges instead that the Corvette was taken pursuant to a random, allegedly malicious, act. Accordingly, plaintiff must plead and prove that the available state remedies would not be adequate to redress the loss of the Corvette. He has not done so. Remedies are available to plaintiff in two states. Plaintiff could pursue a remedy in the Ohio Court of Claims. *See* Ohio Rev. Code § 2743.02. Plaintiff could also pursue Texas state remedies. Even construing plaintiff's complaint liberally, he has neither tried these remedies nor alleged that they are inadequate. Plaintiff fails to state a due process claim upon which relief can be granted. His due process claims against Freeman are DISMISSED.

c.  Fifth Amendment Claim Against Freeman

Plaintiff references the Fifth Amendment multiple times throughout the complaint, often improperly; however, it is unclear which defendant or defendants allegedly violated plaintiff's Fifth Amendment rights by taking without just compensation. The Fifth Amendment does not proscribe the taking of property; rather, it proscribes taking without just compensation. *Hensley v. City of Columbus*, 557 F.3d 693, 695 (6th Cir. 2009). Just compensation is the crux of a takings claim; therefore, "the government has not violated the Constitution until it refuses to compensate the owner." *Id*. at 695–96 (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194–95, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985)). A takings claim ripens after two criteria are met: "(1) the plaintiff must demonstrate that he or she received a 'final decision' from the relevant government; and (2) the plaintiff must have sought compensation through the procedures the State has provided for doing so." *Id*. at

696 (citation omitted). As noted in Section II.C.2.b, plaintiff has not sought compensation through state channels and is not entitled to adjudication on a takings claim. Insofar as plaintiff's complaint sets forth a claim against Freeman for taking without just compensation under the Fifth Amendment, such claim is DISMISSED.

d.  Conspiracy Claim Against Freeman

Plaintiff alleges a conspiracy against Freeman under 42 U.S.C. § 1983. A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). Broken down, a civil conspiracy has three elements: (1) a single plan; (2) a shared conspiratorial objective to deprive plaintiff of constitutional rights; and (3) an overt act in furtherance of the conspiracy. *Id*. Conspiracy claims must be "pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Above all, a conspiracy under § 1983 requires the plaintiff to "demonstrate a constitutional deprivation." *Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x 986, 988 (6th Cir. 2012) (citation omitted). As set forth above, plaintiff has not demonstrated a plausible constitutional deprivation as against Freeman. To be sure, Haley has demonstrated a deprivation of the Corvette. Deprivation of a car does not, however, equate to deprivation of constitutional rights. Nor has Haley shown a conspiracy on the part of Freeman to falsely arrest Haley in deprivation of Haley's constitutional rights. Freeman specifically instructed the Akron defendants not to arrest Haley, and, after being detained by the Akron police, he was transported to his home and released.

Even if Haley could show that a constitutional deprivation occurred, he cannot overcome Freeman's assertion of qualified immunity. Armed with advice from the Rockwall District Attorney's Office and a state court judgment that gave Wascom full rights to the Corvette, an objectively reasonable official would not have concluded that Freeman's actions violated Haley's constitutional rights or that his objective was to do so. The second element of a civil conspiracy is lacking, and plaintiff's claim for civil conspiracy against Freeman is DISMISSED. All claims against Freeman in his individual capacity have been dismissed; thus, Freeman, in his individual capacity, is DISMISSED AS A PARTY.

3. Haley's complaint fails to state a claim against Freeman for municipal liability.

In his second motion to dismiss (Doc. No. 19), Freeman, in his official capacity, asserts that Haley has failed to state a claim for municipal liability. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (quoting *Monell v. New York City Dept. of Soc. Srvs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). Plaintiff's claims against county officials in their official capacity are, therefore, "identical to his suit against the county." *Fox v. Van Oosterum*, 176 F.3d 342, 347 (6th Cir. 1999). As in all suits against a municipality, the county's "policy or custom" must have led to the deprivation. *Id*. at 348. A plaintiff can establish an illegal policy or custom by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, at *28 (6th Cir. 2013).

29

Only one of Haley's claims—Count Five—alleges any sort of policy or custom of the Rowlett defendants that violates federal law. In it, plaintiff states that the municipal defendants, among them the Rowlett defendants, "implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, that included, among other things, using unreliable and unsubstantiated information to form the basis of a LEADS report of a stolen vehicle without performing any investigation into the matter; and to arrest and seize property knowing that it was not a criminal matter." (Doc. No. 1 at 16.) Haley further states that the municipal defendants, including the Rowlett defendants, failed "to adequately train and supervise the Defendant Thatcher, Freeman, Alexander, John Doe I and John Doe II," which amounted to "deliberate indifference to the rights of Haley to be free from unreasonable seizures under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States." (*Id*.) At this stage, having dismissed most of the municipal defendants, the Court need only consider municipal liability claims against Freeman in his official capacity.[14] Though Freeman is not accused in Count Five, he was sued in his official capacity, so the Court addresses any plausible *Monell* claim for municipal liability out of an abundance of caution. Even construing plaintiff's pro se pleadings liberally, Freeman, in his official capacity, is not subject to municipal liability on any of the four permissible bases.

A failure to train claim, for instance, "requires a showing of prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess*, 735 F.3d at *10 (alterations in original) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)). Likewise, a "custom-of-tolerance claim requires a showing that

---

[14] Other than Akron defendant Craig Gilbride, all other defendants accused in Count Five have been dismissed.

there was a pattern of inadequately investigating similar claims." *Id.* Plaintiff does not point to any pattern of violations or abuse, and even highlights the novelty of entering the Corvette on NCIC as stolen.

Plaintiff has not alleged, nor could he, that Freeman has any policymaking authority, much less final policymaking authority. Nor can plaintiff point to an official policy or legislative enactment that violated his federal rights. Plaintiff specifically alleges that the violation arose from verbal, one-off instructions from defendant Thatcher as carried out by the Rowlett defendants and the Akron defendants. There is simply no basis for any claim for municipal liability. The Rowlett defendants' motion to dismiss (Doc. No. 19) for failure to state a claim for municipal liability is GRANTED. Insofar as plaintiff's other claims purport to state a claim for municipal liability against Freeman, plaintiff's claims are DISMISSED. Jeff Freeman, in his official capacity, is DISMISSED AS A PARTY.

### III. CONCLUSION

As set forth above, the Court:

(1) GRANTS plaintiff's motion (Doc. No. 27) to dismiss defendants City of Akron, City of Rowlett, County of Rockwall, and Culpepper;

(2) GRANTS the Rowlett defendants' motion (Doc. No. 17) to dismiss for lack of personal jurisdiction as to defendant Walling, but DENIES the motion as to defendant Freeman and DENIES AS MOOT the Rowlett defendants' alternative motion (Doc. No. 17) to transfer venue;

(3) GRANTS the Rockwall defendants' Rule 12(b)(2) motion (Doc. No. 22) to dismiss for lack of personal jurisdiction as to Thatcher (and finds the motion MOOT as to the County of Rockwall and Culpepper) and further finds the Rule 12(b)(6) motion (Doc. No. 22) to dismiss for failure to state a claim MOOT;

31

(4) GRANTS the Rowlett defendants' motion (Doc. No. 18) to dismiss for failure to state a claim against Freeman in his individual capacity (and finds the motion MOOT as to Walling);

(5) GRANTS the Rowlett defendants' motion (Doc. No. 19) to dismiss for failure to state a claim against Freeman his official capacity (and finds the motion MOOT as to Walling and City of Rowlett);

(5) DENIES AS MOOT the Rowlett and Rockwall defendants' motions (Doc. Nos. 20 and 24) to excuse personal appearance at the CMC; and

(6) DENIES plaintiff's motion (Doc. No. 33) for leave to file a sur-reply.

In light of the forgoing, the City of Akron, City of Rowlett, County of Rockwall, Matt Walling, Jeff Freeman, Kenda Culpepper, and Jon Thatcher are DISMISSED AS PARTIES.

This case shall proceed as filed against the remaining Akron defendants (Craig Gilbride, the Police Chief of the City of Akron and James R. Alexander, a police officer for the City of Akron) and the Wascom defendants (J.B. Wascom and Sheri Chipman).

**IT IS SO ORDERED**.

Dated: February 27, 2014 
_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**