UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


STEPHEN T. HALEY,                )        CASE NO. 5:13-cv-232
                                 )
                                 )
                                 )
            PLAINTIFF,           )        JUDGE SARA LIOI
                                 )
vs.                              )
                                 )        ORDER AND OPINION
CRAIG GILBRIDE, et al.,          )
                                 )
                                 )
            DEFENDANTS.          )



        This matter is before the Court on the motion for judgment on the pleadings filed

by defendants Craig Gilbride, the Akron Police Chief ("Gilbride"); James R. Alexander, Akron

Police Officer ("Alexander"); and the City of Akron. (Doc. No. 34.) Plaintiff Stephen Haley

("Haley"), proceeding *pro se*, has filed a response (Doc. No. 38), and defendants have filed a

reply. (Doc. No. 39.)

        On February 27, 2014, after the filing of the instant motion, the Court dismissed

the City of Akron as a party. (*See* Doc. No. 36.) Additionally, in his response to the motion for

judgment on the pleadings, Haley indicates that the claims against Chief Gilbride are "redundant

in nature[,]" and requests that the Court "drop" Gilbride from this lawsuit. (Doc. No. 38 at 345.)

The Court construes this statement as a motion to drop Gilbride as a party under Fed. R. Civ. P.

21 and GRANTS same. The Court need not consider the motion for judgment on the pleadings

relative to the City of Akron or Gilbride. Instead, the Court shall consider the motion as it

pertains to Alexander, in both his individual and official capacities.

## I.        Factual and Procedural Background

In a previous memorandum opinion and order in this case, the Court summarized

the facts of the dispute as set forth in plaintiff's complaint, which it reproduces below:

This dispute centers on a 2009 black Corvette with VIN 1G1YY36W995111051 ("the Corvette"). Haley acquired the Corvette in Texas in July 2009 from Nomad Preservation, Inc. ("Nomad"), in exchange for services provided to the company. (Doc. No. 1 at 7.) According to the terms of the exchange, Nomad was to continue making payments on the Corvette and to insure it under its own umbrella policy. (*Id.* at 8.) Haley received the vehicle in Akron in August 2009 and drove it without major incident until January 31, 2011.

Before describing the events of January 31, 2011, the Court must journey to Texas. There, in December 2010, the City of Rowlett and its police department engaged in a series of interactions with J.B. Wascom, a Texas resident. Wascom's business relationship with Nomad had soured, to say the least. Wascom told police officers that he possessed a Texas state court judgment against Nomad, ordering that several vehicles, including the Corvette, be returned to Wascom in December 2010. (Doc. No. 30 at 238.) During his initial conversation with Wascom, Jeff Freeman, a Rowlett police officer, was told that the Corvette was in Akron, Ohio in plaintiff's possession. (*Id.*) Freeman opened a criminal matter. In the same month, Wascom traveled to Ohio to track the Corvette. There, local police told him that "they would recover the vehicle if entered on [the National Crime Information Computer] NCIC." (Doc. No. 30-4 at 267.) Wascom relayed this information to Freeman. Upon consultation with the Rockwall County District Attorney's office, however, Freeman categorized the matter as civil, recommended that the criminal case be closed, and advised Wascom to pursue civil remedies.

Yet, this did not end "l'affaire de Corvette". In early 2011, Wascom again informed Freeman that he obtained a final judgment in a civil case regarding the Corvette. Wascom and his wife, Sheri Chipman, informed Freeman that the Corvette was registered to Chipman, that she had the original title to the vehicle, and that she had been making payments on the vehicle the entire time. (Doc. No. 30-4 at 268.) Once more, Freeman consulted with the Rockwall County District Attorney's office and received the following advice from Civil Chief Jon Thatcher: "it was still in a grey area however there is enough evidence to enter the vehicle on NCIC as stolen." (*Id.*) With the belief that "the vehicle [is] in the possession of Stephen Haley . . . in Akron[,] Ohio," Freeman entered the vehicle on NCIC as stolen and notified OnStar. (*Id.*) All parties agree that the report

received by Akron police specified that the driver of the Corvette was not to be arrested, no holds were to be placed on the Corvette, and the Corvette was to be towed. (Doc. No. 30-4 at 261.)

This brings the story back to January 31, 2011. While driving the Corvette, plaintiff was pulled over by five Akron Police Department patrol cars. He was removed from the vehicle at gunpoint, handcuffed, and placed in the back of a patrol cruiser. (Doc. No. 1 at 8.) The arresting officer, James Alexander, spoke with Freeman on the phone. Freeman apprised Alexander of the following facts: that there was a civil judgment on the Corvette, that Thatcher had counseled him to report the Corvette as stolen, but that Haley was not to be arrested. The patrol cruiser deposited Haley at his home, where several neighbors witnessed him emerge from the back of a patrol car. The Corvette was towed.

(Doc. No. 36 at 313-15 [footnotes omitted].)

Plaintiff filed the instant action on January 31, 2013, against multiple Texas and Ohio defendants. In his complaint, plaintiff alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983, as well as debt collection violations under 15 U.S.C. § 1962 and state law claims. (Doc. No. 1 at 13-18.) On February 27, 2014, the Court dismissed the City of Akron, City of Rowlett, County of Rockwall, Kenda Culpepper, Matt Walling, Jeff Freeman, and Jon Thatcher as parties to this lawsuit. (*See* Doc. No. 36 at 343.) The Court has also dismissed Chief Gilbride. *See supra*. Alexander, the remaining law enforcement defendant, now moves for judgment on the pleadings, claiming that the "[c]omplaint is devoid of facts that would put [d]efendant Alexander . . . on notice that he violated Haley's clearly established constitutional rights." (Doc. No. 34 at 304.)[1]

II.    **Standard of Review**

Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). The standard of

---

[1] The remaining defendants, J.B. Wascom and Sheri Chipman, have filed an answer. (Doc. No. 11.)

review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Id*. at 555 (citing authorities).

"'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 479 F.2d 478, 480 (6th Cir. 1973)). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer. "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the

4

plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted).

Complaints filed by a *pro se* plaintiff must be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 US. 97, 106, 797 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

### III.     Law and Analysis

Though the Court summarized the facts of the whole dispute above, the Court finds that a clear statement of all the facts relating to Alexander, and Alexander alone, is appropriate here. The Court considers the following facts regarding Alexander as true: Alexander was "notified by Chevrolet On-Star Service that the 2009 Corvette was stolen and was driving through the Akron, Ohio area; that the notes in the LEADS stated not to arrest the driver, to not place any holds on the vehicle, that the Akron Police Department [should] tow the vehicle, and that the stolen car report was entered by the Rowlett Police department." (Doc. No. 1 at 9.) Upon encountering the Corvette, Alexander and three other patrol cars "surrounded Haley in his 2009 black Corvette with weapons drawn and ordered Haley out of the Corvette, handcuffed him and placed [him] in the back seat of Officer Alexander's patrol cruiser[.]" (*Id*. at 5.) Upon consultation, Alexander's supervisor instructed him to "release" Haley but to tow the vehicle. (*Id*. at 9.) Alexander told Haley "that the Corvette was being seized and taken to Bowers Towing in Akron, Ohio where it would be transported to Rowlett, Texas." (*Id*. at 9.) The officers removed Haley from Alexander's police cruiser, placed him in a different police cruiser, and

took him home. (*Id*.) Alexander later summarized these events in an incident report, in which he stated he spoke with Freeman after detaining Haley, and Freeman informed him of the civil judgment on the Corvette and that the City of Rowlett did not intend to seek charges against Haley. (APD Report, Doc, No. 30-3 at 261.) The report described Haley's arrest status as "Not Arrested." (*Id*. at 259.) With these facts in mind, the Court analyzes the sufficiency of Haley's complaint.

### A.  Fourth Amendment Claim (Count II)

Count II[2] of plaintiff's complaint alleges that plaintiff's "false arrest and detention" violated his rights under the Fourth, Fifth, and Fourteenth Amendments. (Doc. No. 1 at 14.) The Court construes this *pro se* claim broadly as a claim both of unreasonable seizure (the "detention") and arrest without probable cause ("false arrest") under the Fourth Amendment.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]'" *Bletz v. Gribble*, 641 F.3d 743, 754 (6th Cir. 2011) (quoting U.S. Const. amend. IV). A seizure occurs when "'by means of physical force or a show of authority, [an individual's] freedom of movement is restrained.'" *Id*. (quoting *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). It is indisputable that an individual is seized within the meaning of the Fourth Amendment when police officers handcuff the individual and place the individual inside a locked police vehicle. *See, e.g.*, *id*.; *Walters v. Stafford*, 317 F. App'x 479, 485 (6th Cir. 2009). Accepting as true the allegations in the complaint, Alexander unquestionably seized Haley.

---

[2] Count I contains general allegations, and the Court does not address it separately.

6

To justify the seizure, Alexander must have had reasonable suspicion that criminal activity was afoot. *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) (citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)). Reasonable suspicion requires more than a mere hunch but is satisfied by less than probable cause. *Id.* (citation omitted). Reasonable suspicion does not need to arise from an officer's direct observation, but can be based on informant tips and dispatcher information. *Id.* at 779 (citing *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998)).

Under the Fourth Amendment, even if justified at its inception, the manner in which the seizure and search were conducted must also be reasonable. *Smoak*, 460 F.3d at 779 (quoting *Terry v. Ohio*, 392 U.S. 1, 28, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Specifically, the scope of the activities during an investigatory stop must reasonably relate to the circumstances that initially justified the stop. *Id.* (citation omitted). The detention may not last longer than necessary to effectuate the purpose of the stop. *Williams v. Leatherwood*, 258 F. App'x 817, 822 (6th Cir. 2007) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 1023 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)). Although an officer may detain an individual for investigation based upon reasonable suspicion, such detention can mature into an arrest if it occurs over an unreasonable period of time or under unreasonable circumstances. *Fisher v. Harden,* 398 F.3d 837, 844 (6th Cir. 2005) (collecting cases); *see also O'Malley v. Flint*, 652 F.3d 662, 671 (6th Cir. 2011) (detention supported by reasonable suspicion ripened into arrest ''at some point'' during a two-hour stop).

Once a seizure matures into an arrest, it must be supported by probable cause. *Smoak*, 460 F.3d at 779 (citation omitted). "The probable cause needed to justify an arrest means

7

that there were sufficient facts and circumstances to warrant a prudent officer to believe that the suspect had committed or was about to commit an offense." *Meadows v. Thomas*, 117 F. App'x 397, 402 (6th Cir. 2004) (citing *Beck v. Ohio*, 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)). Fair probability, not proof beyond a reasonable doubt or a preponderance of the evidence, suffices for probable cause. *Florida v. Harris*, -- U.S. --, 133 S. Ct. 1050, 1055, 185 L. Ed. 2d 61 (2013) (citation and quotation marks omitted).

Accepting as true the allegations in plaintiff's complaint, Alexander received a report from On-Star that the Corvette was stolen and traveling through Akron. (Doc. No. 1 at 9.) Additionally, the LEADS report classified the Corvette as a stolen vehicle. (APD Report at 261.) Even viewed in the light most favorable to Haley, this information gave Alexander reasonable suspicion that criminal activity was afoot, and Haley cannot state a claim under the Fourth Amendment for the initial stop and seizure.

Further accepting the complaint as true, however, Alexander ordered Haley out of the Corvette at gunpoint, handcuffed him, and placed him in the back of a patrol cruiser. He then spoke with his supervisor, who instructed Alexander to "release" Haley. (Doc. No. 1 at 9, 10.) Alexander also read the LEADS report, which stated not to arrest the driver, but to tow the vehicle. (APD Report at 261.) Additionally, Alexander called Freeman, who informed him that criminal charges would not be brought against Haley. (*Id.*) Nonetheless, Alexander did not immediately release Haley, but rather transferred him, handcuffed, from one patrol cruiser to another.[3] Akron police officers drove Haley thus confined to his house and released him. (Doc. No. 1 at 8, 9.) In the light most favorable to plaintiff, Alexander continued to detain (and perhaps

---

[3] Haley alleges that the officers handcuffed him before placing him in the patrol cruiser, but does not state whether the handcuffs were removed prior to his exiting the cruiser in front of his house. Construing the complaint in the light most favorable to Haley, the Court assumes that Haley remained handcuffed until finally released.

arrested[4]) Haley after receiving explicit instructions from Freeman, his own superior, and the LEADS report that Haley should not be arrested and no criminal charges would be filed against him. At this preliminary stage, Haley has alleged sufficient facts to state a plausible claim against Alexander for an unreasonable seizure and/or arrest without probable cause in violation of the Fourth Amendment. Count II shall proceed as against Alexander.

   **B.  Due Process Claim (Count III)**

Count III of plaintiff's complaint alleges that Alexander, among various other defendants, deprived plaintiff of property without due process in violation of the Fifth and Fourteenth Amendments. (Doc. No. 1 at 14.) Under the Fourteenth Amendment, a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a due process violation, plaintiff must have a liberty or property interest entitled to due process protection. Only thereafter will the Court determine what process is due. *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004).

There are two ways in which to plead a procedural due process claim: (1) that the deprivation resulted from an established state procedure that itself violates due process rights or (2) that the deprivation resulted from a random and unauthorized act for which available state remedies would not adequately compensate plaintiff. *Warren v. Athens*, 411 F.3d 697, 709 (6th Cir. 2005) (citations and quotation marks omitted). Relief under § 1983 for random and

---

[4] In its previous opinion, the Court dismissed the Fourth Amendment claim against Freeman, noting that Haley was not arrested and, moreover, Freeman was not responsible for Haley's detention. The Court was incorrect to say in its prior opinion that Haley was not arrested as a matter of law. Still, the previous result does not change. As noted in that opinion, claims for false arrest under § 1983 only lie against officers who participate in an arrest. *Sappington v. Bartee,* 195 F.3d 234, 237 (5th Cir. 1999). Freeman, who specifically instructed any law-enforcement official who encountered the Corvette not to arrest the driver, did not participate in and was not responsible for the continued detention of Haley by Akron police officers. The Fourth Amendment claim against Freeman was properly dismissed.

unauthorized acts is available only when plaintiff has first pled and proven the inadequacy of state or administrative processes and remedies to redress alleged due process violations. *See Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 649-50 (6th Cir. 2013). State processes are not necessarily inadequate if they are not identical to § 1983 remedies. *Wilson v. Beebe*, 770 F.2d 578, 583 (6th Cir. 1985) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)).

As to defendant Alexander, Haley has not alleged a deprivation of due process. In his due process claim, Haley alleges that Freeman and Thatcher's act of creating the false and unsubstantiated LEADS report led to the deprivation of the Corvette without due process. (Doc. No. 1 at 14-15.) Plaintiff appears to be alleging a random and unauthorized act on the part of Freeman and Thatcher. Accordingly, plaintiff must plead and prove that the available state remedies would not be adequate to redress the loss of the Corvette. He has not done so. Plaintiff could have pursued a remedy in the Ohio Court of Claims. *See* Ohio Rev. Code § 2743.02. Because the Corvette was presumably returned to Texas, plaintiff could also have pursued Texas state remedies. Even construing plaintiff's complaint liberally, he has neither tried these remedies nor alleged their inadequacy. Moreover, in Count III, plaintiff points to no act by Alexander that deprived him of due process. Plaintiff fails to state a due process claim against Alexander, and this claim is DISMISSED.

### C. Civil Conspiracy Claim (Count IV)

"A civil conspiracy under § 1983 is 'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To prevail on a civil conspiracy claim, plaintiff must show that "(1) a 'single plan' existed, (2) [defendants] 'shared in the general

conspiratorial objective' to deprive [plaintiff] of his constitutional . . . rights, and (3) 'an overt act was committed in furtherance of the conspiracy that caused injury' to [plaintiff]." *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). "'[C]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Callahan v. Simmons*, 47 F.3d 1167, at *3 (6th Cir. 1995) (table decision) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). When "a claim of conspiracy merely described the actions taken by various individual defendants, asserting that their actions were taken in furtherance of a conspiracy[,]" the claim is conclusory. *Huffer v. Bogen*, 503 F. App'x 455, 462 (6th Cir. 2012).

To establish a § 1983 conspiracy claim, plaintiff must first demonstrate a constitutional deprivation. *Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x 986, 988-89 (6th Cir. 2012) (quoting *Bauss v. Plymouth Twp.,* 233 F. App'x 490, 496 (6th Cir. 2007)); *see also Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) (same).

As set forth above, with the exception of the Fourth Amendment seizure claim, plaintiff has not stated any plausible claims for constitutional deprivations against Alexander. In alleging a conspiracy to violate his Fourth Amendment rights in Count IV, Haley merely describes the actions taken by various individual defendants. (*See* Doc. No. 1 at 16 ("The conduct of Defendants Thatcher, Freeman, Alexander, John Doe I, and John Doe [II] caused Haley extreme fright and concern for his life when at least five (5) police officers drew their weapons when they forced Haley's vehicle off the road, handcuffed him and locked him in a police cruiser.").) These conclusory statements do not assert that Alexander conspired with anyone to violate Haley's Fourth Amendment rights, or that Alexander agreed with anyone to

11

injure Haley. Indeed, according to the complaint, Haley's continued detention by Alexander *contradicted* the instructions of other, now-dismissed defendants. Haley has failed to state a claim against Alexander for civil conspiracy, and the claim is therefore DISMISSED.

### D.  Municipal Liability Claims (Count V)

Because Haley sued Alexander in his official and individual capacities, the Court must consider the adequacy of any official capacity claims. Official capacity claims—*Monell* claims—"'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo,* 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). As in all suits against a municipality, the municipality's "policy or custom" must have led to the deprivation. *Id*. A plaintiff can establish an illegal policy or custom by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).

In Count V, plaintiff states that the defendants "implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, that included, among other things, using unreliable and unsubstantiated information to form the basis of a LEADS report of a stolen vehicle without performing any investigation into the matter; and to arrest and seize property knowing that it was not a criminal matter." (Doc. No. 1 at 16.) Haley further states that Akron failed "to adequately train and supervise . . . Alexander," which amounted to "deliberate

12

indifference to the rights of Haley to be free from unreasonable seizures under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States." (*Id*.)

Construing plaintiff's *pro se* pleadings liberally, he has not stated an official capacity claim against Alexander on any of the four permissible bases. Plaintiff cannot point to an official Akron policy or legislative enactment that violated his federal rights. Plaintiff specifically alleges that the violation arose from verbal, one-off instructions from Thatcher as carried out by law enforcement officials from Texas and Akron (including Alexander). Plaintiff has not alleged that any Akron official with final policymaking authority ratified illegal actions. Indeed, Alexander's unnamed supervisor specifically instructed Alexander not to arrest Haley.

Nor has plaintiff shown failure to train or custom of tolerance of constitutional violations. A failure to train claim "requires a showing of 'prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Burgess*, 735 F.3d at 478 (alterations in original) (quoting *Miller v. Sanilac Cnty*., 606 F.3d 240, 255 (6th Cir. 2010) (further citation and quotation marks omitted). Likewise, a "custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." *Id*. (citation omitted). Plaintiff does not point to any pattern of violations or abuse, and even highlights the novelty of entering the Corvette on NCIC as stolen, while instructing the Akron police not to arrest the driver. No basis exists in this case for Alexander's liability in his official capacity, and any such claim is DISMISSED.

## E.  Abuse of Process Claim (Count VI)

Count VI of plaintiff's complaint sets forth an abuse of process claim. (Doc. No. 1

at 17.) Specifically, the complaint alleges that "Wascom and Chipman . . . caused a criminal action to be filed against Haley with the Rowlett, Texas prosecutor's office alleging that Haley had stolen, or had received stolen property[.]" (*Id*. at 18.) It further alleges that the "initiation of the criminal proceedings against Haley was done with malice based upon the improper purpose of extorting, or improperly seizing the 2009 Black Corvette[.]" (*Id*.) Count VI therefore appears to apply only to Wascom and Chipman. Out of an abundance of caution, the Court shall consider the abuse of process claim as it applies to Alexander, who is mentioned in Count VI as a participant in the seizure resulting from the "criminal proceedings" in Texas.

Plaintiff asserts the abuse of process claim as a constitutional claim under 42 U.S.C. § 1983. The Sixth Circuit has never recognized "the existence of a federal 'abuse of process' claim." *Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014) (citing *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 676 (6th Cir. 2005)). In the past, when faced with an abuse of process claim, the Sixth Circuit "typically assume[d] that the elements [of a federal due process claim] would likely mirror those of state law." *Garcia v. Thorne*, 520 F. App'x 304, 311 (6th Cir. 2013) (citing *Voyticky*, 412 F.3d at 676-77). In *Rapp*, the Sixth Circuit distanced itself from this practice, signaling that a federal abuse of process claim simply does not exist.

> [P]laintiffs offer no good reason to federalize the abuse of process claim presented in this case. . . .Comparatively, the district court offered a persuasive reason why we should not: The facts of this case demonstrate good reason not to [recognize the existence of a § 1983 due process claim]. In essence, [plaintiffs' abuse of process] theory could potentially open the federal courts to every person who litigates and loses a ticket in state court, as long as the person can allege some motive beyond simple enforcement of the law. There is no reason to do so.

*Rapp*, 557 F. App'x at 448 (alterations in original) (quote omitted). Accordingly, Haley has not stated a claim under § 1983 for a federal abuse of process claim against Alexander.

14

While plaintiff brings the abuse of process claim under § 1983, he also specifies that this claim is a state law abuse of process claim. Construing this *pro se* complaint liberally, the Court will evaluate the adequacy of a state law abuse of process claim against Alexander. Under Ohio law, the three elements abuse of process are: "'(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.'" *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (Ohio 1996) (quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994)). The tort "connotes the use of process properly initiated for improper purposes," not the malicious initiation of a lawsuit. *Id.* (quoting *Clermont Envtl. Reclamation Co. v. Hancock*, 474 N.E.2d 357, 362 (Ohio Ct. App. 1984)). Abuse of process "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself[.]" *Id.* (citation and quotation marks omitted).

Abuse of process is inapplicable to this case. Construing the claims in the complaint as true, by instituting proceedings against Haley, defendants sought to return the Corvette to Texas. (Doc. No. 1 at 18.) Seizure of the Corvette, therefore, was the subject of the proceedings, rather than some collateral advantage not involved in the proceeding itself. Haley has not stated a claim against Alexander for abuse of process. Whether, as Haley claims, the remaining defendants wrongfully initiated proceedings against Haley is another question entirely and is not before this Court.

## F. Fifth Amendment Claim

Plaintiff references the Fifth Amendment's takings clause multiple times

throughout the complaint; however, it is unclear which defendant or defendants allegedly violated plaintiff's Fifth Amendment rights. The Fifth Amendment proscribes taking of private property without just compensation. *Hensley v. City of Columbus*, 557 F.3d 693, 695 (6th Cir. 2009). Just compensation is the crux of a takings claim; therefore, "the government has not violated the Constitution until it refuses to compensate the owner." *Id.* at 695–96 (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194–95, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985)). A takings claim ripens after two criteria are met: "(1) the plaintiff must demonstrate that he or she received a 'final decision' from the relevant government; and (2) the plaintiff must have sought compensation through the procedures the State has provided for doing so[.]" *Id.* at 696 (citation and quotations marks omitted). As noted above, plaintiff has not sought compensation through state channels and is not entitled to adjudication on a takings claim. Insofar as plaintiff's complaint sets forth a claim against Alexander for taking without just compensation under the Fifth Amendment, such claim is DISMISSED.

16

## IV.    Conclusion

For the reasons set forth above, Haley's motion to dismiss defendant Gilbride is GRANTED. Defendants' motion for judgment on the pleadings is MOOT as to defendants City of Akron and Gilbride. As to defendant Alexander, the motion is GRANTED IN PART AND DENIED IN PART. All claims against Alexander in his individual and official capacities are DISMISSED, with the exception of the unreasonable seizure/false arrest claim in Count II.

**IT IS SO ORDERED**.

Dated: July 31, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**