# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN T. HALEY, | ) | CASE NO. 5:13-cv-232 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| J.B. WASCOM, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the parties' cross motions for summary judgment on plaintiff's first amended complaint. Plaintiff Stephen Haley's ("Haley") motion for summary judgment (Doc. No. 72 ["Pltf. Mot."]) has been opposed by defendants J.B. Wascom ("Wascom") and Sheri Chipman ("Chipman") (collectively, "Wascom defendants") (Doc. No. 73 ["Defts. Opp'n"], to which plaintiff has replied (Doc. No. 77 ["Pltf. Reply"]). The Wascom defendants' motion for summary judgment (Doc. No. 71 ["Defts. Mot."] has been opposed by plaintiff (Doc. No. 74 ["Pltf. Opp'n"]), to which the Wascom defendants have replied (Doc. No. 78 (["Defts. Reply"]).

For the reasons set forth herein, the Wascom defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.

## I. BACKGROUND

This case revolves around a 2009 black Corvette ("Corvette").[1] The background facts of this case have been extensively detailed in two earlier opinions, familiarity therewith is assumed. (*See* Doc. Nos. 36 and 58.) Only facts relevant to the Court's summary judgment analysis will be repeated herein.

Plaintiff and the Wascom defendants have a history of business dealings and litigation involving a company called Nomad Preservation ("Nomad"). Wascom and Haley each have state court judgments against Nomad—plaintiff's judgment from Ohio and Wascom's judgment from Texas. Haley's and Wascom's litigation with Nomad arise from their respective business dealings with Nomad, and both claim that their judgments entitle them to the Corvette.

In the first amended complaint, Haley alleges that Nomad, through its president, Sam El-Haje, "agreed to transfer" the Corvette to Haley "in exchange for services and certain other obligations owed to Haley." (Doc. No. 63 (First Amended Complaint ["FAC"]) ¶¶ 46-49; Doc. No. 72-12 (Declaration of Jeffrey Davis ["Davis Decl."] ¶ 26).) According to Haley, Nomad was to make the payments on the Corvette and, when the car was paid for, "the vehicle would be titled to Haley." (FAC ¶ 50; Davis Decl. ¶ 28.) In August 2009, the Corvette was shipped from Texas to Akron, Ohio (Davis Decl. ¶ 29), and Haley alleges that he drove the car without incident until January 31, 2011.

---

[1] VIN 1G1YY36W995111051. (Doc. No. 36 at 313.)

Haley was driving the Corvette on that date and was stopped by City of Akron Police Officers. (FAC ¶¶ 51, 87.) Akron Police Officer James Alexander ("Alexander"), who is no longer a defendant in this case, told Haley that the car had been listed as stolen by the police department in Rowlett, Texas, and that Alexander had been instructed to release Haley and tow the Corvette, which would then be transported back to Texas. (FAC ¶¶ 91-93.) This incident, and the events leading up to it in Texas, forms the basis for Haley's two count first amended complaint against the Wascom defendants.[2]

Pursuant to 42 U.S.C § 1983, Haley claims in count I that the Wascom defendants conspired with previously dismissed defendants in Texas—Jeffrey Freeman ("Freeman") (an investigator for the City of Rowlett Police Department) and Jon Thatcher ("Thatcher") (the Civil Chief for the Texas Rockwall County District Attorney's Office)—to seize the Corvette in violation of Haley's rights under the Fourth Amendment of the United States Constitution. (FAC ¶¶ 7, 134-44.) Plaintiff alleges in count II that the Wascom defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, by attempting to recover the Corvette from Haley with "[t]he use or threat of use of violence" in violation of 15 U.S.C. § 1692d.[3] (FAC ¶¶ 146-49.)

The parties' cross motions seek summary judgment on both counts. Regarding count I, the motions offer dueling arguments as to whether Haley has a possessory interest in the Corvette that was protected by the Fourth Amendment, and

---

[2] Numerous defendants have previously been dismissed from this action (*see* Doc. Nos. 36, 40 and 63), and Haley chose not to pursue his action against Alexander in the first amended complaint. (See Doc. No. 60 at 557 (All references to page numbers are to the page identification numbers generated by the Court's electronic filing system.).) Only the Wascom defendants remain.

[3] Plaintiff incorrectly cites the relevant statutory section as 15 U.S.C. § 1962. (*See* FAC ¶ 146.)

whether the Wascom defendants acted under color of law in connection with the seizure of the Corvette. With respect to count II, the parties take opposing positions as to whether the Wascom defendants are debt collectors, or were attempting to collect a debt, as defined by the FDCPA.[4]

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the court which demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in

---

[4] The Wascom defendants also argue that they are entitled to summary judgment because the Court lacks personal jurisdiction over them, and because plaintiff's complaint is a collateral attack on the Wascom defendants' Texas judgment and therefore barred by the *Rooker-Feldman* doctrine. (Defts. Mot. at 729-31.) But there is no need to address these arguments because the Court concludes that defendants are entitled to summary judgment on other grounds.

Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Summary judgment requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co*. 536 F. App'x 517, 519 (6th Cir. 2013) (citing *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

Summary judgment is required:

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex,* 477 U.S. at 322-23 (internal quotation marks and citation omitted).

The typical summary judgment standard of review "poses unique issues" when cross motions for summary judgment are filed. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). When cross motions are filed, the district court must evaluate each party's motion on its own merits, drawing all reasonable inferences against the moving party. *Id.* (citation omitted). If it is possible to draw inferences in either direction, then both motions for summary judgment should be denied. *Id.* at 592-93. The making of contradictory claims on summary judgment does not mean that if one is rejected the other must be accepted. *Id.*

## B. Count I – Fourth Amendment violation pursuant to 42 U.S.C. § 1983

Certain rights are secured by the Fourth Amendment against government infringement. *Revis v. Meldrum* 489 F. 3d 273, 289 (6th Cir. 2007) (citing *Flagg Bros., Inc. v. Brooks*, 426 U.S. 149, 156, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978) ("[M]ost rights secured by the Constitution are protected only against infringement by governments.")). Pursuant to 42 U.S.C. § 1983, Haley alleges that the Wascom defendants conspired with

Freeman and Thatcher to seize the Corvette in violation of plaintiff's Fourth Amendment rights.[5]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n. 3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). Title 42 U.S.C. § 1983 provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

"The terms of [§] 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' This second

---

[5] The Court previously concluded in the context of motions to dismiss the original complaint that "plaintiff has not demonstrated a plausible constitutional deprivation against Freeman. . . . Even if Haley could show that a constitutional deprivation occurred, he cannot overcome Freeman's assertion of qualified immunity." (Doc. No. 36 at 339-40.)  With respect to Thatcher, the Court concluded that it would be unconstitutional to exercise jurisdiction over Thatcher, and Thatcher was also dismissed from the original complaint. (*Id*. at 329 and 232.) Plaintiff moved to restore Freeman and Thatcher to the lawsuit in the FAC by seeking to allege that Thatcher and Freeman engaged in a conspiracy with Wascom and Chipman to unlawfully seize the Corvette in violation of the Fourth Amendment. But the Court denied Haley's motion, concluding that even if plaintiff could demonstrate a constitutional violation against them, returning them to the lawsuit would be futile because they are entitled to qualified immunity. (Doc. No. 58 at 538-44.)

element requires that the plaintiff show that the defendant acted 'under color of law.'"
*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S. Ct. 1598, 1604, 26 L. Ed. 2d 142
(1970).

   In order for plaintiff to carry his burden at trial with respect to count I,
plaintiff will have to prove *both* elements of his § 1983 claim—constitutional violation
and state action. No matter how wrongful the conduct of a private party may be, that
conduct is not actionable under § 1983 if the private party is not acting under color of
state law. As the Court will explain below, Haley cannot withstand summary judgment
on count I because he fails to make a showing sufficient to establish state action, which is
essential to proving his § 1983 claim.

   **1. § 1983 conspiracy**

   Generally, private parties do not act "under color of state law," and only
state or local government officials or employees are subject to suit under § 1983.
However, there are certain circumstances where private parties may be found to have
acted under color of law. *Revis*, 489 F.3d at 289 (quoting *Lugar v. Edmondson Oil Co.,
Inc.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)). One of those
circumstances occurs when a private party conspires with a government official or
employee. *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL–CIO v. City of
Memphis,* 361 F.3d 898, 905 (6th Cir.2004) (where plaintiff claims cooperation or
concerted action between state and private actors, the private actor may qualify as a state
actor and therefore be subject to liability under **§** 1983); *Revis*, 489 F.3d at 290-91
(collecting cases). State action by a private party in a § 1983 conspiracy may be found
even if the state actor with whom the private party allegedly conspired is immune from

suit. *See Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980).

The general definition of a civil conspiracy applies in the context of a § 1983 action: an agreement between two or more persons to injure another by an unlawful action. *Revis*, 489 F.3d at 291 (citing *Am. Postal Workers Union,* 361 F.3d at 905); *Adickes*, 398 U.S. at 158 (plaintiff must demonstrate that the alleged conspirators had a "meeting of the minds" and "reached an understanding" to deprive plaintiff of her constitutional rights); *Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir. 2011). Specifically, in order to prove a § 1983 conspiracy, plaintiff must show that: (1) a single plan existed; (2) the conspirators shared a general conspiratorial objective to deprive the plaintiff of a constitutional right; and (3) an overt act was committed. *Revis,* 489 F.3d at 290 (citing *Am. Postal Workers Union*, 361 F.3d at 905 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985))). Direct evidence of an express agreement among the conspirators is not required—circumstantial evidence may provide adequate proof of the conspiracy. *Weberg v. Franks,* 229 F.3d 514, 528 (6th Cir. 2000) (citation omitted).

The Wascom defendants posit that there is no evidence in the record to support plaintiff's § 1983 conspiracy claim. To survive summary judgment, plaintiff must show some "evidence from which to infer that the defendants acted in concert" with Thatcher and Freeman to deprive plaintiff of a constitutional right. *Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 564-65 (6th Cir. 2010) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)).

Both in support of his motion and opposition to defendants' motion, Haley advances the admissions of the Wascom defendants[6] and Alexander,[7] and an incident report prepared by the City of Rowlett Police Department[8] ("Incident Report"). The Incident Report, prepared by Freeman, describes the interaction between the Wascom defendants and the Rowlett Police Department regarding the Corvette; plaintiff does not offer any evidence or documentation of interactions among the Wascom defendants, Freeman, and Thatcher that are not contained in the Incident Report. Because of its importance to plaintiff's argument that the Wascom defendants conspired with Freeman and Thatcher, the Court will summarize the report herein.

### 2. The Rowlett Police Department Incident Report

According to the Incident Report, Wascom contacted Freeman on multiple occasions regarding Wascom's civil Texas judgment for the Corvette, which Wascom stated was located in Ohio. After Freeman's conversation with Wascom on 12/10/2010, Freeman sought the advice of Rockwall County District Attorney "Ashley," who "advised that if the property was awarded in civil court, victim needs to go through the civil court to seek [a] remedy[,]" and Freeman reported this disposition to Wascom. (Incident Report at 776.)

---

[6] Doc. No. 72-2 (Wascom Response to Request for Admissions ["Wascom Adm."]) and Doc. No. 72-4 (Chipman Response to Request for Admissions ["Chipman Adm."]).

[7] Doc. No. 72-6 (James Alexander's Response to Request for Admissions ["Alexander Adm."]).

[8] Doc. No. 72-2 ["Incident Report"] at 771-82. The Incident Report is attached to the FAC and plaintiff's motion for summary judgment, and is not disputed by the parties. Wascom admitted in his response to Request for Admission No. 7 that the Incident Report "appears to be an accurate copy" of that report. (Wascom Adm. at 768.) The same admission in response to Request for Admission No. 7 was made by Chipman. (Chipman Adm. at 841.)

Wascom again contacted the Rowlett Police Department on 12/20/2010, advising Freeman that Wascom was in Ohio in search of the Corvette, and that Wascom had been advised by the local police department that "they would recover the vehicle if entered on the NCIC [National Crime Information Computer]." (*Id*.) At the same time, Wascom advised Freeman that the Corvette was registered to Chipman. (*Id*.) But Freeman was not persuaded to act on this information by Wascom. In fact, it remained the opinion of both Freeman and "Det. Needham" that "this case is still a civil matter[,]" and Freeman "recommend[ed] that the case be closed due to being a civil matter. Rockwall DA advises that they will not take a criminal case in the matter. The circumstances do no [sic] warrant the vehicle to be entered on NCIC as stolen." (*Id*.) The case was marked closed on 12/22/2010.

But Wascom did not consider the matter closed and contacted the Rowlett Police Department again on 1/27/2011. On that date, the Incident Report states that Wascom told Freeman "that he has received a final judgment in the case. The civil judge advised that he needed to contact local PD to investigate the [Corvette]. The vehicle is registered to Wascom's wife Sheri Chipman. Chipman has the original title to the vehicle and has been making payments on the vehicle the entire time. Chipman further advised that the vehicle is equipped with On Star." (*Id*. at 777.) Again, Freeman did not act on the information provided by the Wascom defendants to list the Corvette as stolen, but rather "explained to Wascom and Chipman that [Freeman] would have to speak with the Rockwall District Attorney to see if [the District Attorney] felt this was criminal." (*Id*.)

According to the Incident Report, Freeman then "went to the Rockwall DA office and spoke with the civil chief Jon Thatcher. Thatcher advised that it was still in a grey area however there is enough evidence to enter the vehicle on NCIC as stolen." (*Id*.) After receiving this advice from Thatcher, Freeman listed the Corvette on the NCIC, and the vehicle was thereafter recovered by the Akron Police Department in Ohio. (*Id*.)

### 3. Undisputed record does not contain a scintilla of evidence of a conspiracy

Haley argues that the Incident Report, and the admissions of Wascom and Chipman, demonstrate without dispute that the Wascom defendants did not file a stolen car report,[9] that both Texas and Ohio law enforcement were aware that the Wascom defendants' claim to the Corvette was civil in nature,[10] and that "the seizure [of the Corvette] was the result of fraud [and] the broadcasting of a false stolen car report." (Pltf. Mot. at 764.) From these undisputed facts, Haley would have the Court conclude that there is no genuine dispute that a § 1983 conspiracy existed among the Wascom defendants, Freeman, and Thatcher.

But this undisputed evidence does not support that conclusion. To the contrary, the Incident Report shows that Freeman rebuffed the Wascom defendants when they initially contacted the Rowlett Police Department with their Texas judgment, telling them that they needed to pursue the Corvette through civil, not criminal, channels. When the Wascom defendants returned to the Rowlett Police Department with additional information regarding the title owner of the Corvette and payment information, Freeman

---

[9] Wascom Adm. at 768 (Req. for Adm. No. 7) Chipman Adm. at 841 (Req. for Adm. No. 7).

[10] Alexander Adm. at 916 (Req. for Adm. No. 10); *see also* Incident Report at 776-77.

again took no action, but advised the defendants that he would have to discuss the matter with the district attorney. Thatcher, who had no direct contact with the Wascom defendants, advised Freeman that there was "enough evidence to enter the vehicle on NCIC as stolen," and Freeman so listed the Corvette on the NCIC based on Thatcher's advice.

There is no evidence in the record that Freeman and Thatcher had a plan or objective or meeting of the minds with, or acted at the behest of, the Wascom defendants, to deprive plaintiff of a constitutional right. Rather, the record shows that Freeman maintained his position that the Wascom defendants' pursuit of the Corvette was civil, not criminal, until advised otherwise by the district attorney after information regarding ownership of the Corvette was provided. Such independent action does not support even an inference of a conspiracy. *Revis*, 489 F.3d at 287 (police officer receiving writ of execution had writ reviewed by county attorney who advised that the writ was valid, and police officer's execution of writ was based on his own misunderstanding of what writ required him to do, not on any plan or objective with judgment creditor to deprive plaintiff of his constitutional rights); *see Shapiro v. City of Glen Cove*, 236 F. App'x 645, 647 (2d Cir. 2007) (private party does not act under color of state law when evidence shows that state official exercised independent judgment and did not act at the direction of the private party).

Haley's contention that the Wascom defendants fraudulently obtained the Texas judgment and provided false information to Freeman does not advance his case. Even if true, there is no evidence in the record that Freeman and Thatcher were aware that the Wascom defendants (allegedly) obtained the Texas judgment by fraud, or of

Haley's (claimed) possessory interest in the Corvette. Without this knowledge, Freeman and Thatcher could not have known that Haley might have a Fourth Amendment right in the Corvette to be protected, and therefore could not have formed a conspiracy with the Wascom defendants to deprive Haley of that right. *See Revis,* 480 F.3d at 291 ("Revis's claim that the private-party defendants applied for the writs maliciously or without cause—such as by overstating the judgment amount owed—does not give rise to state action."); *Meuse v. Stults*, 421 F. Supp. 2d 358, 364 (D. Mass. 2006) ("The fact that Stults is alleged to have provided false information to the police only drives the point home further because a conspiracy cannot exist for purposes of § 1983 where the police are unaware of the allegedly violative nature of their actions due to the misrepresentations of a private party. *Gilbert,* 788 F. Supp. 854, 860 (E.D. Pa.1992).")

Plaintiff's argument that Freeman's "false" stolen car report demonstrates a conspiracy is unavailing. The Incident Report reflects that listing the Corvette on the NCIC as stolen was not false. While it is true that the Wascom defendants did not file a stolen car report, Thatcher concluded, based on available information, that there was "enough evidence to enter the vehicle on NCIC as stolen." (Incident Report at 777.) Whether that advice was correct is an entirely separate issue from whether a reasonable jury could conclude that Thatcher's decision, and Freeman's action based on that decision, was the result of a conspiratorial agreement with the Wascom defendants.

Finally, there is no circumstantial evidence in the record of any kind from which a reasonable jury could infer evidence of a conspiracy. Circumstantial evidence may support the finding of a conspiracy when, for example, the private actor has a special relationship with the state actor, or when the private actor possesses or exerts influence

14

over the state actor. *See e.g. Wagenmann v. Adams,* 829 F.2d 196, 210-11 (1st Cir.1987); *Cruey v. Huff,* No. CIVA 7:09CV00516, 2010 WL 1539995, at *3 (W.D. Va. Apr. 16, 2010) (*aff'd sub nom. Cruey v. Kirby,* 445 F. App'x 647 (4th Cir. 2011)). But there is nothing in this record to suggest that the Wascom defendants were anything more than mere complainants at the Rowlett Police Department, or that they possessed or exerted influence over Freeman and Thatcher to bypass regular police procedures in order to violate plaintiff's alleged constitutional rights.

Haley argues at great length that the "Akron Police Department became the repossession company." (Pltf. Mot. at 759.) But the repossession case law is inapposite to the § 1983 conspiracy analysis in this matter. This case does not involve a private repossession action in which a state official has no role to play, except perhaps in a standby role, in which case the issue is "whether a state official's standby role in a private party's remedy gives rise to state action[.]" *Revis,* 489 F.3d at 291. In this case, the Corvette was seized because the Rockwall County District Attorney concluded that there was enough evidence to consider the Corvette stolen, and because the Rowlett Police Department listed the Corvette on the NCIC.

There is not a scintilla of evidence or inference of a conspiratorial agreement between the defendants and Rowlett Police department to deprive plaintiff of a constitutional right. The Court recognizes that it must be cautious in using summary judgment to resolve cases involving conspiracy or state of mind. *See O'Hara v. Mattix,* 255 F. Supp. 540, 544 (W.D. Mich. 1966) (citing *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962) (other citation omitted)). That said, based on the undisputed record and for the reasons discussed above, the Court

concludes that no reasonable jury could find there was a conspiracy among the Wascom defendants, Thatcher, and Freeman to deprive plaintiff of his constitutional rights, and thus could not find that the Wascom defendants acted under color of law or engaged in state action.

If the plaintiff cannot make a sufficient showing that the Wascom defendants acted under color of state law then, for purposes of Haley's § 1983 claim, "we need not inquire further" into whether Haley has an interest in the Corvette subject to constitutional protection and, if there is such interest, whether any constitutional right was violated.[11] *See Boykin v. Van Buren Township*, 479 F.3d 444, 451 (6th Cir. 2007). In order to carry his burden at trial with respect to count I, plaintiff will have to prove both elements of his § 1983 claim. Because plaintiff has failed to make a sufficient showing to establish the element of state action, his entire claims fails as a matter of law. *Celotex*, 477 U.S. 322-23.

---

[11] The FAC alleges that plaintiff's Fourth Amendment right in the Corvette was violated when it was seized by the Akron Police Department. In his original complaint, plaintiff also alleged a violation of the Fourteenth Amendment, which he does not assert in the FAC. The Fourth Amendment protects certain interests in property from unreasonable search and seizure. There is no dispute that Haley was deprived of the Corvette, but deprivation of the vehicle does not automatically equate to the deprivation of a constitutional right under either amendment. In order for seizure of the Corvette to violate the Fourth Amendment, Haley must have a possessory interest in the vehicle. *See Rodriguez v. City of Cleveland*, 439 F. App'x 433, 450-51 (6th Cir. 2011) ("[Plaintiff] no longer had a possessory interest in the vehicles after that date and cannot claim a violation of his [Fourth Amendment] rights in the property's detention after [that date]."). Plaintiff contends that he has a possessory interest in the Corvette because it was given to him by Nomad for monies due plaintiff, and because he has an Ohio judgment against Nomad (Doc. No. 72-10 (Summit County, Ohio Judgment ["Ohio Judgment"]) that entitles him to the Corvette. The Wascom defendants claim that the Corvette is titled to Chipman and it was not Nomad's to give to plaintiff and, further, that the Corvette is among the vehicles subject to Wascom's Texas judgment against Nomad (Doc. No. 72-4 (Rockwall County, Texas Judgment ["Texas Judgment"])). In addition to each side's state court judgments, the record is replete with conflicting evidence regarding which party is entitled to the Corvette. (Doc. No. 72-2 (pp. 791-828) (Testimony of Sheri Chipman ["Chipman Test."]) at 809 ("The black [Corvette] was purchased under my name [Chipman], and the payments had been made by KDS."); (Davis Decl. ¶ 18 (Nomad purchased the Corvette and paid for it); Doc. No. 72-7 (Declaration of Stephen Haley ["Haley Decl."]) ¶ 3 (Haley made payments on the Corvette).)

Accordingly, defendants' motion for summary judgment on count I of the FAC is GRANTED, and plaintiff's motion for summary judgment on count I is DENIED.

## C. Count II – Fair Debt Collection Act

In count II, plaintiff alleges that the Wascom defendants violated the FDCPA by attempting to recover the Corvette based on the Texas judgment (to which plaintiff was not a party), and placed his life in danger, thereby violating the provision of the FDCPA, which prohibits the use or threat of violence in connection with collection of a debt.

The Wascom defendants argue that they are entitled to summary judgment on Count II because they are not debt collectors as defined by the FDCPA, because the Wascom defendants were not attempting to collect a debt, and because Haley's FDCPA claim is time barred by the FDCPA's one year statute of limitations period. (Defts. Mot. at 732-33.) Haley's opposition to defendants' motion is silent as to count II. (*See* Pltf. Opp'n.)

Haley's motion for summary judgment on count II is somewhat confusing. He contends that he is not a judgment debtor of Wascom, that "[a] finding of liability on Count I mandates a finding of liability on Count II, and that Haley was a creditor to Nomad and that the remedy available to Wascom was to "domesticate the Texas judgment in Ohio; issue a third-party garnishment, or engage in fraudulent conveyance litigation." (Pltf. Mot. at 764.)

The FDCPA was enacted by Congress "to eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e). In 15 U.S.C. § 1692(a)(6), the FDCPA defines a "debt collector" as follows:

(**6**) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

> (**A**) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

> (**B**) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

> (**C**) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

> (**D**) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

> (**E**) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

> (**F**) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns

a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

Title 15 U.S.C. § 1692k(d) provides that (emphasis added):

An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within *one year* from the date on which the violation occurs.

The record is devoid of any evidence that the Wascom defendants are debt collectors as defined by the FDCPA. Further, the Corvette was seized on January 31, 2011. Plaintiff instituted this action on January 31, 2013. If the conduct alleged by the Wascom defendants was actionable under the FDCPA, plaintiff's FDCPA claim was filed outside of the one year statute of limitation period.

Accordingly, the Court concludes that the Wascom defendants are entitled to judgment as a matter of law on Count II.  Defendants' motion for summary judgment on count II is GRANTED, and plaintiff's motion for summary judgment on count II is DENIED.

### III. CONCLUSION

For the reasons contained herein, the Wascom defendants' motion for summary judgment on plaintiff's first amended complaint is GRANTED. Plaintiff's motion for summary judgment is DENIED. In so ruling, the Court makes no finding or ruling regarding what interest in the Corvette, if any, plaintiff may have. But that issue is one that must be resolved in state court, and not in this action.

**IT IS SO ORDERED**.

Dated: August 19, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**